**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF MICHIGAN**

TONIA MILLER,                          )
                                       )
                                       )
                                       )
            Plaintiff,                 )
                                       )
            v.                         )        Case No. 1:24-cv-00279
                                       )
DETECTIVE TIM HURTT,                   )        Judge Hon. Jane M Beckering
ROBERT PECK, RUSSELL BELL,             )
BRIAN HUNTER,                          )        Magistrate Hon. Sally J. Berens
and the CITY OF BATTLE CREEK,          )
a municipal corporation, and the       )
COUNTY OF KALAMAZOO,                   )
MICHIGAN, a municipal corporation,     )
all jointly and severally,             )
                                       )
            Defendants.                )

**PLAINTIFF'S REPONSE TO DEFENDANT CITY OF BATTLE CREEK'S MOTION TO**
**DISMISS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)**

**NOW COMES** the Plaintiff, TONIA MILLER, by and through her attorneys, Erickson

& Oppenheimer, and responds to the City of Battle Creek's Motion to Dismiss, as follows:

**INTRODUCTION**

1)      On September 10, 2024, Defendant City of Battle Creek filed both a Motion to

Dismiss pursuant to FRCP 12(b)(6) and a Brief in Support of that Motion. Dkt. 41.

2)      On July 22, 2024, Plaintiff filed a First Amended Complaint, pursuant to Federal

Rule of Civil Procedure 15(a)(1)(B), in response to Defendant Battle Creek's filings and this

Honorable Court's Order of July 3, 2024. Dkt. 22.

1

## STANDARD OF REVIEW

3) Under the notice pleading regime of the Federal Rules of Civil Procedure, the plaintiffs' complaint must contain only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

4) When considering a motion to dismiss, the Court shall "construe all of the plaintiff's factual allegations as true and must draw all reasonable inferences in the plaintiff's favor." *Handy-Clay v. City of Memphis*, 695 F.3d 531, 538 (6th Cir. 2012). In order to state a claim, the complaint need only make out a "plausible account" of the plaintiff's entitlement to relief. *Agema v. City of Allegan,* 826 F.3d 326, 331 (6th Cir. 2016). The Supreme Court has held that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The *Iqbal* court stressed that applying the plausibility standard is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

5) Courts must read Rule 12(b)(6) in conjunction with Rule 8(a)(2)'s requirement that a plaintiff need offer "only 'a short and plain statement of the claim showing that the pleader is entitled to relief.' Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the... claim is and the grounds upon which it rests.' *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (*quoting Twombly*, 550 U.S. at 555).

## ARGUMENT

### IV. A.1: Exculpatory Evidence

6) In Section IV.A., Defendant Hurrt, and presumably Defendant Battle Creek allege that Defendant Hurtt did not violate Plaintiff's Due Process rights.

7)      Defendants Hurtt and the City of Battle Creek ignore the clear allegations presented in the first amended complaint that put the Defendants on notice as to the allegations. Dkt. 23. Specifically, in paragraphs, 11 (Hurtt coordinated the conspiracy); 12 & 13 (Hurtt directed Peck and Bell to obtain the confession of Plaintiff without a lawyer present); 15 (Hurtt conspired with Hunter to secure a wrongful conviction); 32-37 (detailing the actions of Hurtt and Hunter where Hurtt specifically discussed the decision to downplay the pneumonia diagnosis and highlight child implausible child abuse allegations); 93 (Hurtt  specifically was tasked with creating a case where Plaintiff could be criminally prosecuted for an injury that did not occur and Hurtt knew that the autopsy report was eliding the possibility that the subdural hematoma was birth related); 94 (the manner of Hurtt's investigation crafted and controlled Defendant Hunter's medical conclusions); 95 (Hurtt used Bell and Peck to acquire a confession in violation of Plaintiff's constitutional rights).

8)      At the motion to dismiss stage, the Plaintiff's framing of the allegations control. *Reynolds v. FCA US LLC*, 546 F. Supp.3d 635, 655 (E.D. Mich. 2021) (it should be noted that *Reynolds* stemmed from a 9(b) standard which has a heightened level of specificity and the court *still* denied the motion to dismiss where defendants attempted to assert their own reading of the complaint).

9)      The Court may grant a motion to dismiss "only if, after drawing all reasonable inferences from the allegations in the complaint in favor of the plaintiff, the complaint still fails to allege a plausible theory of relief." *Garceau v. City of Flint*, 572 F. App'x. 369, 371 (6th Cir. 2014) (citing *Iqbal*, 556 U.S. at 677–79). It is not a reasonable inference to conclude that Defendants be allowed to interpret the amended complaint in the manner that is most favorable to themselves. To do otherwise would essentially create an impossibility for a Plaintiff to create a complaint absent

3

full discovery and a chance to depose the parties and subject the defendants to cross examination and the creation of a thorough record. That is not the requirement of 12(b)(6).

10)    Defendants claim that the amended complaint fails to allege that Defendant Hurtt withheld exculpatory evidence. Dkt. 41, at 16.

11)    Defendants are ignoring the allegations detailed in paragraph 7 above which makes it clear that Hurtt controlled the findings of Defendant Hunter and conspired with him to produce an autopsy report that elided the pneumonia diagnosis and ignored the clinical history of A.D.

12)    Defendants argue, without any evidence, that Defendant Hurtt would not have been able to influence Defendant Hunter. Dkt. 41, at 16. Defendants are making the mistake of supplanting the allegations in the amended complaint with their own interpretation of the evidence by declaring that the allegations are implausible. *Id*. This is simply not the standard for a 12(b)(6) motion.

13)    Defendants then turn to the *Ferris* decision to justify their interpretation of the medical standards in this case. *See Ferris v. City of Cadillac*, 726 Fed. Appx. 473 (2018) (attached as Dkt. 41-3 by Defendants).

14)    *Ferris* is a summary judgment case where there was a thoroughly developed record prior to the District Court's ruling. Dkt. 41-3, at 1. It is inappropriate for Defendants to demand the heightened standard of a Motion for Summary Judgment at the 12(b)(6) stage. *See Wesley v. Campbell*, 779 F.3d 421, 428 (6th Cir. 2015) (error for the District Court to rely on summary judgment cases to establish plaintiff's burden in a motion to dismiss).

15)    The actual issue is whether Plaintiff has alleged, in her complaint that Defendant Hurtt withheld exculpatory evidence. The amended complaint alleges, with sufficient specificity, that the pneumonia diagnosis was downplayed and became no part of the official autopsy due to

4

the intervention of Defendant Hurtt. Dkt. 23, at 32-37. Defendants may disagree about what the evidence will eventually show in this case, but it is not implausible to suggest that a detective who is willing to secure a false confession through the auspices of Peck and Bell would also ensure that the official medical examiner's report contained no conclusions that would suggest that this was a death from natural causes.

16)    Defendants do not address that it would be a singular *Brady* violation for Defendant Hurtt to secure a false confession and then withhold from the defense at trial that the confession was falsely obtained. That is sufficient to state a *Brady* claim. We know that the confession was false because, as Defendants point out repeatedly in this section, the post-conviction proved that A.D.'s death was not due to shaken baby syndrome.

### IV.A.2: Fabrication and the Coerced Confession

17)    Defendants selectively read the amended complaint to conclude that there are simply no allegations in the complaint that Defendant Hurtt fabricated evidence or produced a false confession. Dkt. 41, at 20. As the above makes clear, that is simply not the case. In paragraphs, 11 (Hurtt coordinated the conspiracy); 12 & 13 (Hurtt directed Peck and Bell to obtain the confession of Plaintiff without a lawyer present); 15 (Hurtt conspired with Hunter to secure a wrongful conviction); 32-37 (detailing the actions of Hurtt and Hunter where Hurtt specifically discussed the decision to downplay the pneumonia diagnosis and highlight child implausible child abuse allegations); 93 (Hurtt  specifically was tasked with creating a case where Plaintiff could be criminally prosecuted for an injury that did not occur and Hurtt knew that the autopsy report was eliding the possibility that the subdural hematoma was birth related); 94 (the manner of Hurtt's investigation crafted and controlled Defendant Hunter's medical conclusions); 95 (Hurtt used Bell and Peck to acquire a confession in violation of Plaintiff's constitutional rights).

18)      Defendants cite *Mills v. Barnard*, 869 F.3d 473, 484 (6th Cir. 2017), for the proposition that this court should find that there is no fabrication of evidence claim that is sufficiently alleged in the amended complaint. Dkt. 41, at 20-21. However, that case actually supports the Plaintiff. In *Mills*, the Sixth Circuit reversed the District Court because the court relied on the expert in a separate proceeding. 869 F.3d, at 486. This is precisely the error that Defendants make in their own brief and urge this District Court to adopt. Dkt. 41, at 21. *Mills* actually demands that, in the context of a 12(b)(6) Motion to Dismiss, the sole basis of consideration is the allegations in the complaint. 869 F.3d, at 486.

19)      Defendants argue that there was no showing of coercion in the statement and this defeats the claim. Dkt. 41, at 21. Defendants ignore the fact that the allegations are that Defendant Hurtt specifically engaged Peck and Bell to acquire the statement because it could be accomplished without a *Miranda* warning. Dkt. 23, ¶95.

### IV.B: Malicious Prosecution

20)      Defendants completely misread *Sykes v. Anderson*, and are actively urging this Honorable Court to reach a conclusion contrary to the Sixth Circuit's precedent. 625 F.3d 294, 308 (6th Cir. 2010).

21)      Defendants cite the "truthful materials" statement from *Sykes*, but then completely ignore the Court's holding. Dkt. 41, at 22. In considering whether the defendant Sergeant was liable for malicious prosecution, the court read "influence" broadly and makes it clear that Defendants request should be denied. 625 F.3d, at 316-17. Where the defendant in that case provided false information to the prosecutor, he is liable for malicious prosecution. *Id*. In the present case, the allegations, which are all that are being tested in a 12(b)(6) motion, satisfy the

"influence" component of the malicious prosecution count and Defendant Hurtt is liable for the count just as the defendant was in *Sykes*.

22) Defendants then turn to the issue of probable cause and continues to ignore the allegations contained in the amended complaint. Defendants argue that Defendant Hurtt merely relied on the expert opinions produced in the case. Dkt. 41, at 24. Defendants ignore the fact that Defendant Hurtt manufactured probable cause through his conspiratorial actions. In paragraphs, 11 (Hurtt coordinated the conspiracy); 12 & 13 (Hurtt directed Peck and Bell to obtain the confession of Plaintiff without a lawyer present); 32-37 (detailing the actions of Hurtt and Hunter where Hurtt specifically discussed the decision to downplay the pneumonia diagnosis and highlight child implausible child abuse allegations); 93 (Hurtt  specifically was tasked with creating a case where Plaintiff could be criminally prosecuted for an injury that did not occur and Hurtt knew that the autopsy report was eliding the possibility that the subdural hematoma was birth related); 94 (the manner of Hurtt's investigation crafted and controlled Defendant Hunter's medical conclusions); 95 (Hurtt used Bell and Peck to acquire a confession in violation of Plaintiff's constitutional rights).

23) There can be no reasonable reliance where the Defendant himself created the conditions that manufactured probable cause.

### IV.C: Conspiracy

24) Plaintiff's amended complaint satisfies the standards set forth in *Revis v. Meldrum*, 489 F.3d 273, 290 (6th Cir. 2007). Defendant Hurtt conspired with Hunter, Peck and Bell to hide exculpatory evidence, control the medical findings, obtain a false confession, and ultimately convict Plaintiff.

25)    The amended complaint alleges that a single plan existed. In paragraphs, 11 (Hurtt coordinated the conspiracy); 12 & 13 (Hurtt directed Peck and Bell to obtain the confession of Plaintiff without a lawyer present); 15 (Hurtt conspired with Hunter to secure a wrongful conviction); 32-37 (detailing the actions of Hurtt and Hunter where Hurtt specifically discussed the decision to downplay the pneumonia diagnosis and highlight child implausible child abuse allegations); 93 (Hurtt  specifically was tasked with creating a case where Plaintiff could be criminally prosecuted for an injury that did not occur and Hurtt knew that the autopsy report was eliding the possibility that the subdural hematoma was birth related); 94 (the manner of Hurtt's investigation crafted and controlled Defendant Hunter's medical conclusions); 95 (Hurtt used Bell and Peck to acquire a confession in violation of Plaintiff's constitutional rights).

26)    Further, the objective to deprive Plaintiff of her constitutional rights was not only shared, but in fact resulted in Plaintiff's wrongful conviction.

27)    Third, as detailed above, the amended complaint is explicit in the details of the over acts that were committed. The decisions to elide the pneumonia evidence, obtain a false confession, and manufacture probable cause all sufficiently allege a conspiracy claim.

28)    Defendants wrongly claim that the amended complaint merely states that Defendant Hurtt was present during the autopsy. Dkt. 41, at 27. Based on all the foregoing, that is simply incorrect. *Gavitt v. Born* does not establish a blanket rule that accepted investigatory techniques remove the plausibility of a conspiracy claim. 835 F.3d 623, 645. Rather, the plaintiff in *Gavitt* failed to allege specific facts that showed one or more defendants attempted to influence and control the investigation and the subsequent expert opinions. In the present case, Plaintiff has made specific allegations that Defendant Hurtt actively controlled the decision to elide the pneumonia evidence and was not merely "present" at the autopsy. Dkt. 23, at ¶32-37 and 94.

### IV.D: Failure to Intervene

29)     Defendants merely cross-reference their previous claims about the deprivation of

Plaintiff's constitutional rights. Plaintiff will follow suit. As stated above, Defendants deprived

Plaintiff of her constitutional rights through the allegations contained in the amended complaint.

Dkt. 23. Defendant Hurtt is specifically alleged to have crafted the conspiracy and, as such, was

in no position to intervene to derail the conspiracy of which he was the author.

### IV.E: Qualified Immunity

30)     Defendant Hurtt claims that he is entitled to a 12(b)(6) dismissal on the basis of

qualified immunity. Dkt. 41, at 28. Plaintiff continues to maintain that she has shown more than

enough in the amended complaint to justify a denial of Defendant's pleading, however, Defendant

should further be denied because he is demanding a 12(b)(6) dismissal but, bases his claim on

summary judgment standards that are not the Plaintiff's burden at this juncture. *See Wesley v.*

*Campbell*, 779 F.3d 421, 428 (6th Cir. 2015) (error for the District Court to rely on summary

judgment cases to establish plaintiff's burden in a motion to dismiss).

31)     The constitutional deprivation, however was clearly established at the time of

Plaintiff's case. As *Spurlock v. Satterfield* established:

> We conclude that, here, plaintiffs sufficiently raised claims that allege
> violations of their constitutional and/or statutory rights. Namely, that
> Satterfield and other defendants wrongfully investigated, prosecuted,
> convicted and incarcerated them; that Satterfield fabricated evidence and
> manufactured probable cause; that they were held in custody, despite a lack
> of probable cause to do so; and that Satterfield and others conspired to
> maliciously prosecute and convict them. Satterfield cannot seriously contend
> that a reasonable police officer would not know that such actions were
> inappropriate and performed in violation of an individual's constitutional
> and/or statutory rights.
> 167 F.3d 995, 1005 (6th Cir. 1999).

32)    It would be just as absurd for Defendant Hurtt to claim that there was no clearly established right to be free of the of the constitutional deprivations that are detailed in the amended complaint.

### IV.F: Monell

33)    The First Amended Complaint puts Defendant City of Battle Creek on notice that Defendant Hurtt conspired with Peck and Bell to obtain a false confession from Plaintiff Miller, and that he conspired with Defendant Hunter to hide the pneumonia diagnosis. Dkt. 23. The First Amended Complaint makes clear that the application of the *Monell* rule is because of the actions of Battle Creek's employee and the sanctioning of those deprivations of Plaintiff's constitutional rights through the policy, custom and practices that allowed those employees to act in such a manner and cause such harm to Plaintiff.

34)    Under Monell and its progeny, there are four ways a plaintiff can demonstrate a policy, practice, or custom that could allow for municipal liability: (1) the existence of an illegal official policy or legislative enactment; (2) that an official with final decision making authority ratified illegal actions; (3) the existence of a policy of inadequate training or supervision; or (4) the existence of a custom of tolerance or acquiescence of federal rights violations. *Lipman v. Budish*, 974 F.3d 726, 747 (6th Cir. 2020) (*quoting Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. 2013)).

35)    The City of Battle Creek is attempting to require fact pleading from Plaintiff, but *Monell* does not subject a plaintiff to a higher standard of pleading. *Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 168, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993).

36)    The First Amended Complaint specifies in the body of Count VII the allegations that spell out the *Monell* claim against the City of Battle Creek and were incorporated in Count VII through the incorporation language. Dkt. 23.

37)    The First Amended Complaint explicitly states that the allegations are that, when the issue is the death or injury of a child, the pursuit of that case is that the investigation is allowed, by the custom and practice of the City of Battle Creek, to be inadequate and that the veracity of the case is not thoroughly tested. *Id*. Essentially, the allegations is that the standards for fairness and truth-seeking are significantly lowered when there is a dead child.

### IV.G: Indemnification

38)    Defendant City of Battle Creek is correct that the Michigan Statute, MCL 691.1408, is discretionary and not mandatory. The Catch-22 for the Plaintiff is that because this decision is discretionary, it becomes a moving target at the whim of the defendant. By seeking to have Count V dismissed before the municipality has made a decision on whether to indemnify Defendant Hurtt, the Defendant City of Battle Creek could request the 12(b)(6) dismissal of the count, then after it is dismissed, make the decision to indemnify Defendant Hurtt. At this stage, it is premature for Battle Creek to seek to dismiss Count V, when it has not indicated its discretionary choice. Defendant City of Battle Creek also points to no deficiency in the notice pleading requirement of Count V and thus has not stated a basis for it to dismissed pursuant to FRCP 12(b)(6).

39)    The ambiguity arises because, Defendant City of Battle Creek appears, based on this filing, to be representing Defendant Hurtt where the two share counsel and filing.

40)    Defendant City of Battle Creek makes arguments on behalf of Defendant Hurtt, but, as stated above, the City has not made a decision not to indemnify Defendant Hurtt.

WHEREFORE, based on the foregoing analysis, Plaintiff respectfully requests that this

Honorable Court deny Defendants Motion to Dismiss.

Respectfully submitted,

/s/ Michael Oppenheimer

Erickson & Oppenheimer, Ltd.
223 W. Jackson, Suite 612
Chicago, IL 60606
312-327-3370

## <u>CERTIFICATE OF SERVICE</u>

Jon Neuleib, a licensed attorney, states that on October 1, 2024, the foregoing Response was served on all attorneys of record via ECF.


<u>/s/ Jon Neuleib</u>

Erickson & Oppenheimer, Ltd.
223 W. Jackson, Suite 612
Chicago, IL 60606
312-327-3370