**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF MICHIGAN**

TONIA MILLER,                                    )
                                                 )
                                                 )
                                                 )
              Plaintiff,                          )
                                                 )
         v.                                       )         Case No. 1:24-cv-00279
                                                 )
DETECTIVE TIM HURTT,                              )         Judge Hon. Jane M Beckering
ROBERT PECK, RUSSELL BELL,                        )
BRIAN HUNTER,                                     )         Magistrate Hon. Sally J. Berens
and the CITY OF BATTLE CREEK,                     )
a municipal corporation, and the                  )
COUNTY OF KALAMAZOO,                              )
MICHIGAN, a municipal corporation,                )
all jointly and severally,                        )
                                                 )
              Defendants.                         )

**PLAINTIFF'S REPONSE TO DEFENDANT HUNTER'S MOTION TO DISMISS**
**PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)**

**NOW COMES** the Plaintiff, TONIA MILLER, by and through her attorneys, Erickson

& Oppenheimer, and responds to the Defendant Brian Hunter's Motion to Dismiss, as follows:

**INTRODUCTION**

1)      On September 10, 2024, Defendant Brian Hunter filed a Motion to Dismiss pursuant

to FRCP 12(b)(6). Dkt. 40.

2)      On, July 22, 2024, Plaintiff Miller filed a First Amended Complaint, pursuant to

Federal Rule of Civil Procedure 15(a)(1)(B), in response to Defendant Battle Creek's filings and

this Honorable Court's Order of July 3, 2024. Dkt. 22.

3)      The First Amended Complaint puts Defendant Brian Hunter on notice that Plaintiff

alleges he conspired with Detective Hurtt to obtain a false confession from Plaintiff Miller and that

he failed to address the actual cause of the child's death in question at the underlying criminal proceeding. Dkt. 23, ¶ 32-37, 55.

## STANDARD OF REVIEW

4)    Under the notice pleading regime of the Federal Rules of Civil Procedure, the plaintiffs' complaint must contain only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

5)    When considering a motion to dismiss, the Court shall "construe all of the plaintiff's factual allegations as true and must draw all reasonable inferences in the plaintiff's favor." *Handy-Clay v. City of Memphis*, 695 F.3d 531, 538 (6th Cir. 2012). In order to state a claim, the complaint need only make out a "plausible account" of the plaintiff's entitlement to relief. *Agema v. City of Allegan,* 826 F.3d 326, 331 (6th Cir. 2016). The Supreme Court has held that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The *Iqbal* court stressed that applying the plausibility standard is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*.

6)    Courts must read Rule 12(b)(6) in conjunction with Rule 8(a)(2)'s requirement that a plaintiff need offer "only 'a short and plain statement of the claim showing that the pleader is entitled to relief.' Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the... claim is and the grounds upon which it rests.' *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (*quoting Twombly*, 550 U.S. at 555*)*.

## ARGUMENT

7)      At the outset, it should be noted that Defendant Hunter explicitly recognizes the Plaintiff has filed a well-plead complaint stating that she has characterized the allegations as that Defendant Hunter's actions are a "deliberate and knowing fabrication of evidence. Dkt. 40-1, at 1.

8)      Defendant Hunter has produced a chart that purports to draw distinctions between "facts" and "conclusions," by labeling elements of the amended complaint that delineate allegations that display liability as "conclusions" and those that mitigate liability as "facts." Dkt. 40-1, at 6-7.

9)      It is unclear how Defendant attempts to differentiate the categories based on the actual content of the amended complaint. Plaintiff is alleging that Defendant Hunter conspired with Hurtt, Peck and Bell by failing to document and provide exculpatory evidence that was a part of his forensic pathological examination. Dkt. 23, ¶14, 15, 35, 36, 41-44, 52, 55, 62, 92-94. Plaintiff has explicitly stated the actions that give rise to the counts that apply to Defendant Hunter and to attempt to dismiss them as "conclusions" is an overreading of the *Iqbal*/*Twombly* analysis.

### Statute of Limitations

10)      In Section 4 of the brief in support of the Motion to Dismiss, Defendant claims that the statute of limitations has run on the claims against him. Dkt. 40-1, at 10.

11)      Defendant Hunter asserts that the accrual date is January 21, 2021, but only cites to it as "a matter of public record." *Id*.

12)      The problem with this claim is that it ignores the plain fact that the State appealed the conclusions of the trial court and the ruling on that appeal did not come down from the Appellate Court until April 8, 2021. *Ex*. 1. This moves the accrual date substantially past the unsupported January 25, 2021 date that Defendant selectively chooses in his Motion. Dkt. 40.

13)      The Sixth Circuit has been explicit that due to the *Heck* bar on §1983 claims, the

accrual does not occur until the vacatur of the state conviction becomes final:

> By a similar token, though, defendants improperly ignore the requirement that § 1983 claims like D'Ambrosio's, which imply the invalidity of a prior conviction, accrue only when the conviction "is reversed or expunged." *Wolfe*, 412 F.3d at 714; see also *Wallace*, 549 U.S. at 393, 127 S.Ct. 1091 (noting that, under *Heck*, a § 1983 action accrues only after a conviction is "set[ ] aside"). In support of their argument that D'Ambrosio's cause of action accrued the moment that the district court granted the conditional writ of habeas corpus, defendants cite *Smith v. Gonzales*, 222 F.3d 1220 (10th Cir.2000). But Smith does not support defendants' position. There, the Tenth Circuit held that the statute of limitations began when the plaintiff's state conviction was "vacated" in a § 2254 proceeding, at which point the success of a § 1983 action would not call the plaintiff's prior conviction into question. Id. at 1222. *Smith* is therefore perfectly consistent with the requirement that a § 1983 plaintiff's underlying conviction must be reversed or vacated before civil rights claims implicating the conviction accrue. *See Wallace*, 549 U.S. at 393, 127 S.Ct. 1091; Wolfe, 412 F.3d at 714. *See also Poventud v. City of New York*, 750 F.3d 121, 135, 2014 WL 182313, at *10 (2d Cir. Jan. 16, 2014) (noting that *Heck* does not bar a § 1983 suit "where the underlying conviction has already been expunged," even if the defendant is subject to retrial).
>
> Application of this rule to D'Ambrosio's case is straightforward. Until the vacatur of D'Ambrosio's state conviction became final, *Heck* barred his § 1983 claims, which clearly implied the invalidity of his conviction. *See Wallace*, 549 U.S. at 393, 127 S.Ct. 1091; *Wolfe*, 412 F.3d at 714. Crucially, a panel of this court held that D'Ambrosio's state conviction had not been vacated before the grant of the unconditional writ, which occurred—at earliest— in 2010. See D'Ambrosio II, 656 F.3d at 388. His § 1983 suit was filed in 2011. Because D'Ambrosio's civil rights claims did not accrue until his state conviction was vacated and the Heck bar was lifted, the two-year statute of limitations does not bar his current claims. *D'Ambrosio v. Marino*, 747 F.3d 378, 385-86 (6th Cir. 2014).

14)      From the analysis of the *Heck* bar, and the pendency of the criminal conviction until,

at least, April 8, 2021, it is clear that the statute of limitations raised by Defendant Hunter should

be denied.

### **Defendant Hunter's Assertion that Plaintiff's Claims**

### **Sound Soley in Negligence**

15)      Defendant then begins Section 5 of his Brief in Support of his Motion with the

assertion that the only claim against Defendant Hunter is a negligence claim. Dkt. 40-1, at 12.

16)    Defendant Hunter incorrectly states that the only conclusion that can be drawn from the complaint is that he is accused of making an "incorrect diagnosis." *Id*. That is patently false. Plaintiff is alleging that Defendant Hunter conspired with Hurtt, Peck and Bell by failing to document and provide exculpatory evidence that was a part of his forensic pathological examination. Dkt. 23, ¶14, 15, 35, 36, 41-44, 52, 55, 62, 92-94.

17)    Defendant Hunter, in his chart agrees that the symptoms present at the time of the autopsy include those that could have been caused by acute pneumonia. Dkt. 40-1, at 11. Although Plaintiff, at this juncture, is being drawn into fact pleading outside the requirements of a Response to a 12(b)(6) challenge, it is clear from Defendant Hunter's autopsy report that he failed to include *any* information about pneumonia or respiratory issues in general in his conclusions. Ex. 2. Perhaps Plaintiff is taking the bait of being drawn into a fact-pleading specific response, but it is disingenuous for Defendant to claim that he somehow memorialized and reflected the actual condition of the child at the time of the autopsy when his report never mentions the diagnosis. *Id*. The sole mention of pneumonia is in the third to last sentence of the microscopic section of the report and forms no basis for his diagnosis. *Id*., at 7.

18)    Defendant Hunter completely ignores the allegations in paragraphs 35-37 of the first amended complaint that plainly state that it was a deliberate act to create a false autopsy report that ignored the clear indications of pneumonia and intentionally ignored the clinical history. Dkt. 23. This is not a "misdiagnosis"—it is the intentional framing of an innocent person.

19)    At the motion to dismiss stage, the Plaintiff's framing of the allegations control. *Reynolds v. FCA US LLC*, 546 F. Supp.3d 635, 655 (E.D. Mich. 2021) (it should be noted that *Reynolds* stemmed from a 9(b) standard which has a heightened level of specificity and the court

*still* denied the motion to dismiss where defendants attempted to assert their own reading of the complaint).

20)     The Court may grant a motion to dismiss "only if, after drawing all reasonable inferences from the allegations in the complaint in favor of the plaintiff, the complaint still fails to allege a plausible theory of relief." *Garceau v. City of Flint*, 572 F. App'x. 369, 371 (6th Cir. 2014) (citing *Iqbal*, 556 U.S. at 677–79). It is not a reasonable inference to conclude that Defendant gets to interpret the amended complaint in the manner that is most favorable to himself. To do otherwise would essentially create an impossibility for a Plaintiff to create a complaint absent full discovery and a chance to depose the parties and subject the defendants to cross examination and the creation of a thorough record. That is not the requirement of 12(b)(6).

## **Qualified Immunity based on Negligence**

21)     Having improperly concluded that the complaint only alleges negligence, Defendant Hunter then compounds the error in Section 6 by claiming that he is entitled to Qualified Immunity *entirely* based on his framing of the complaint as a statement of mere negligence. Dkt. 40-1, at 13.

22)     Defendant Hunter then claims that he is entitled to a 12(b)(6) dismissal on the basis of qualified immunity. *Id*. Plaintiff continues to maintain that she has shown more than enough in the amended complaint to justify a denial of Defendant's pleading, however, Defendant should further be denied because he is demanding a 12(b)(6) dismissal but, bases his claim on summary judgment standards that are not the Plaintiff's burden at this juncture. *See Wesley v. Campbell*, 779 F.3d 421, 428 (6th Cir. 2015) (error for the District Court to rely on summary judgment cases to establish plaintiff's burden in a motion to dismiss).

23)     *Wesley* goes on to state:

> Moreover, it is generally inappropriate for a district court to grant a 12(b)(6) motion to dismiss on the basis of qualified immunity. Although

an officer's "entitle[ment] to qualified immunity is a threshold question to be resolved at the earliest possible point," that point is usually summary judgment and not dismissal under Rule 12. *See Evans–Marshall v. Bd. of Educ. of Tipp City Exempted Village Sch. Dist.*, 428 F.3d 223, 235 (6th Cir.2005) (Sutton, J., concurring) (observing that the fact-intensive nature of the applicable tests make it "difficult for a defendant to claim qualified immunity on the pleadings before discovery " (emphasis in original)); see also *Jacobs v. City of Chicago*, 215 F.3d 758, 775 (7th Cir.2000) (Easterbrook, J., concurring) ("Rule 12(b)(6) is a mismatch for immunity and almost always a bad ground of dismissal."); *Chesser v. Sparks*, 248 F.3d 1117, 1121 (11th Cir.2001) ( "[Q]ualified immunity is typically addressed at the summary judgment stage of the case." ); *Grose v. Caruso*, 284 Fed.Appx. 279, 283 (6th Cir.2008) ("[T]he standard for a 12(b)(6) motion is whether the allegations, if taken as true, could state a claim upon which relief may be granted, [and] dismissal of Appellants on the basis of qualified immunity is premature."). Unsurprisingly, each of the qualified-immunity cases cited by the district court involved summary judgment and not Rule 12(b)(6) dismissal.
779 F.3d at 433-34.

24)     Defendant Hunter's Brief in support of his motion relies almost entirely on summary

judgment cases to make his claim of relief. He cites:

*Harlow v. Fitzgerald*, 457 U.S. 800 (1982)
*Saucier v. Katz*, 533 U.S. 194 (2001)
*Daniels v Williams*, 474 U.S. 327 (1986)
*County of Sacramento v Lewis*, 523 U.S. 833 (1998)
*Ahlers v. Schebil*, 188 F.3d 365, 372- 373 (6th Cir. Mich. 1999)
*Lewellen v. Metropolitan Gov't*, 34 F.3d 345, 348 (6th Cir. Tenn. 1994)
*Gregory v City of Louisville*, 444 F.3d 725 (6th Cir. 2006)
*Moldowan v. City of Warren*, 578 F.3d 351 (6th Cir. 2009)
*Brewer v. Hayne*, 860 F.3d 819 (5th Cir. 2017)

The entire basis for his conclusion that he is entitled to qualified immunity rests on

the basis of a summary judgment standard and not of 12(b)(6) which, as *Wesley* points out, is clear

error. 779 F.3d at 433-34.

25)     Defendant does cite *Spurlock v. Satterfield*, 167 F.3d 995, 1005 (6th Cir. 1999).

*Spurlock*, however, strongly supports Plaintiff's claims:

We conclude that, here, plaintiffs sufficiently raised claims that allege violations of their constitutional and/or statutory rights. Namely, that Satterfield and other

defendants wrongfully investigated, prosecuted, convicted and incarcerated them; that Satterfield fabricated evidence and manufactured probable cause; that they were held in custody, despite a lack of probable cause to do so; and that Satterfield and others conspired to maliciously prosecute and convict them. Satterfield cannot seriously contend that a reasonable police officer would not know that such actions were inappropriate and performed in violation of an individual's constitutional and/or statutory rights.
167 F.3d 995, 1005 (6th Cir. 1999

26)    Although *Spurlock* clearly applies to law enforcement, Defendant whole heartedly supports the holding. Dkt. 40-1., at 16. Because Defendant conspired with a law enforcement officer, the applicability is evident. Even a medical examiner would know that their forensic evaluation was going to be used in a criminal matter and that the decision to forego placing the pneumonia diagnosis and the clinical history in the conclusions actively sought to deprive Plaintiff of her constitutional rights.

27)    Similarly, Defendant cites *Stemler v City of Florence*, 126 F.3d 856 (6th Cir. 1997). Dkt. 40-1, at 15. The block quote that Defendant places in his own brief succinctly states that where there is fabrication of evidence, it follows that it would influence the judgment of the jury. 126 F.3d at 872; Dkt. 40-1, at 15.

28)    In *Gregory v City of Louisville*, 444 F.3d 725, 744 (6th Cir. 2006), cited by Defendant at Dkt. 41, 16, the court specifically held that it is inappropriate to grant qualified immunity where a forensic examiner was alleged to have withheld evidence. This case law supports Plaintiff and actively argues against Defendant.

29)    Defendant cites *Lawyer v. Kernodle*, out of the Eighth Circuit, but fails to show why this should be persuasive for his position. 721 F.2d 632 (8th Cir. 1983). The case only states that the medical examiner was immune while performing official duties, but is absolutely silent as to active participation in a conspiracy. *Id.*, at 635.

30)    In the same vein, Defendant cites *Galbraith v. County of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002). In *Galbraith*, the court concluded (prior to *Iqbal* and *Twombly*) that the bare assertion of a §1983 claim for false statements was enough to defeat the motion to dismiss. It is unclear how Defendant supports his argument where the allegations are that he conspired to elide the pneumonia evidence with Detective Hurtt. In *Pierce v. Gilchrist*, the court found that where the forensic examiner had disregarded the truth, there would not be a grant of qualified immunity. 359 F.3d 1279, 1294 (10th Cir. 2004). Neither of these cases argue that when the allegations in the complaint are that Defendant actively withheld evidence that there should be a grant of qualified immunity.

### Judicial Estoppel

31)    Defendant asserts that, "Plaintiff has taken the position that Dr. Hunter acted negligently." Dkt. 40-1, at 21. That assertion is not supported by the Motion for Relief of Judgment. Ex. 3. Again, Plaintiff is being asked to go beyond the pleading requirements of *Iqbal*/*Twombly* to rebut this claim, but Defendant is overstating the actual content of the pleading and this needs to be addressed.

32)    In the Motion for Relief of Judgment, Plaintiff plead that Hunter had found evidence of the triad and that his diagnosis aligned with the prevailing belief of the medical community. Ex. 3, at 2. However, Plaintiff always maintained that there could have been no shaken baby syndrome because she did not cause the injuries and no one else could have caused them. *Id*., at 3.

33)    The lung pathologist, Dr. Francis Green, concluded that there was evidence of severe acute pneumonia that caused A.D.'s death. *Id*., at 3. That conclusion was *not* based on advancements in medical science.

34)    The memorandum in support of the Motion explicitly stated that Hunter had concluded that the death was not accidental "[d]espite the history of illness." *Memo.*, at 3. In the current complaint, the Plaintiff takes the same position that Defendant Hunter reached his conclusions by deliberately omitting the clinical history. Dkt. 23, ¶35.

35)    The memorandum specifically states that it was Dr. Hunter's conclusion that stopped any further inquiry into the natural causes of A.D.'s death. *Memo.*, at 3.

36)    The memorandum laid out in great detail the evidence that would have pointed toward a natural cause for A.D.'s death. *Id.*, 4-9.

37)    The memorandum reflects what Dr. Hunter testified to at trial, but does not excuse his improper conclusion. *Id.*, 13.

38)    The lung pathologist, Dr. Green examined the medical evidence that was available at the time of the autopsy and concluded that there was ample evidence of pneumonia from the clinical history, the chest X-rays, and laboratory results. *Memo.*, at 16-17. None of these conclusions were based on newly discovered evidence and they were available and known to Defendant Hunter at the time of the autopsy.

39)    Further, the analysis by Dr. Roland Auer showed that there was no evidence of an impact site at the location of the bleeding. *Id.*, at 20-21. The memorandum concludes that Dr. Auer agreed with Dr. Green and this was based on the knowledge available to Defendant Hunter at the time of the autopsy. Dr. Auer concluded that there is no scientific support for the hypothesis that A.D.'s death was caused by abusive shaking. *Id.*, at 22. Nothing in Dr. Auer's report was based on advances in medical science—rather, it was a conclusion reached on the very materials that were produced at the time of the autopsy. *Id.*

40)      Defendant is cherry picking specific phrases from the Appellate Court's opinion, but ignoring the actual content of Plaintiff's filing. The position in the amended complaint is not inconsistent with the filings in her criminal post-conviction and judicial estoppel does not apply to these circumstances.

### **Absolute Immunity for Testimony**

41)      Defendant Hunter does not have absolute immunity for his testimony at trial. *Vakilian v. Shaw*, 335 F.3d 509, 516 (6th Cir. 2003). The Sixth Circuit has declined to extend absolute immunity where the testimony is based on an analogy to a complaining witness. *Id*. In the present case, it is Defendant Hunter's own conspiratorial report that becomes the content of his testimony. He authored a report that specifically deprived Plaintiff of her constitutional rights and as such, he is not protected by absolute immunity. *Id*.

42)      The Sixth Circuit furthered this analysis in *Gregory v. City of Louisville*. 444 F.3d 725, 738 (6th Cir. 2006). In *Gregory*, the issue was fabricated evidence that was testified to at trial. *Id*., at 737-38. The Sixth Circuit does not immunize actions that "relate back" to the witness' actions prior to taking the stand. *Id*., at 739.

43)      In the present case, the "self-serving" result that the Sixth Circuit intends to limit squarely applies to a witness who conspired to deprive Plaintiff of her constitutional rights. *Id*.

44)      Defendant then reiterates the points dealt with above in Sections 9-12. These arguments have all been dealt with above in the individual sections where they were first raised. Plaintiff will not belabor the arguments already made through repetition.


WHEREFORE, Plaintiff respectfully requests that this Honorable Court Deny the Motion to Dismiss.

Respectfully submitted,

/s/ Michael Oppenheimer

Erickson & Oppenheimer, Ltd.
223 W. Jackson, Suite 612
Chicago, IL 60606
312-327-3370

## **CERTIFICATE OF SERVICE**

Jon Neuleib, a licensed attorney, states that on October 1, 2024, the foregoing Response was served on all attorneys of record via ECF.


<u>/s/ Jon Neuleib</u>

Erickson & Oppenheimer, Ltd.
223 W. Jackson, Suite 612
Chicago, IL 60606
312-327-3370